LEE, Justice,
for the Court:
James R. West, Charles Hicks and George Walley, taxpayers and residents of Greene County, protested (without success) the issuance of tax anticipation notes by the Greene County Board of Supervisors, the matter was appealed by them to the Circuit Court of said county, and subsequently *1261 transferred to the chancery court. The chancellor entered a decree in favor of the Greene County Board of Supervisors and the taxpayers have appealed here, assigning four (4) errors committed by the lower court.
At the April, 1977 meeting of said Board of Supervisors, an order was entered initiating the procedure for issuance of one hundred seventy-five thousand dollars ($175,-000) notes in anticipation of tax collections for the purpose of paying operating expenses. Publication of intention to issue the notes was made and, at the May, 1977 meeting, petitions protesting issuance of same were filed with the Board. The petitions were referred to the Circuit Clerk of Greene County with the request that he canvass the registration books and determine the number of qualified electors in the county and the number of qualified names affixed to the petitions. The Circuit Clerk certified to the Board of Supervisors that there were six thousand five hundred sixty-four (6,564) qualified electors in the county and that thirteen hundred ninety-eight (1,398) valid signatures appeared on the petitions. Those names constituted 21.30% of the qualified electors in said county. Mississippi Code Annotated Section 19-9-27 (1972) provides that twenty percent (20%) of the qualified electors of a county protesting issuance of such notes requires an election on the proposition.
After receiving the certification from the circuit clerk, the matter was taken under advisement by the Board. It recessed until May 18 and again to May 20. On the latter date, the Board examined the petitions and adjudicated that three hundred twenty-eight (328) names on the petitions were duplicates. Those names were deleted from the petitions, reducing the signatures to one thousand seventy (1,070) valid names then appearing thereon, which constituted 16.3% of the qualified electors in the county. The Board then entered an order directing issuance of the notes without calling for an election on the proposition. The appellants prepared a bill of exceptions and requested the president of the Board to sign same, which he declined to do. The unsigned bill of exceptions was filed and is a part of the record, along with the petitions, the minutes of the Board of Supervisors and the pleadings.
I.
Did the chancellor err in refusing to re-cuse himself in the trial of the cause?
The taxpayers appealed from the Board of Supervisor’s order to the circuit court. Honorable Merle Palmer, the circuit judge, recused himself stating as reason that his court reporter was paid pro rata from the counties in the district, and she had an interest in the outcome of the case, which affected him. He designated Circuit Judge Lester Williamson to sit as special judge. Subsequently, Judge Williamson transferred the cause to the chancery court presided over by Chancellor Rex Gordon. Mississippi Code Annotated Section 9-1-11 (1972) sets forth the instances in which a judge should not preside on a case:
“The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties.”
Judge Gordon did not come within the provisions of the above statute. He was not related to any of the parties, he was not interested in the cause, and the first assignment is without merit.
II.
Did the lower court err in declining to require appellee’s attorney to withdraw from representing appellee because he was a material witness?
Attorney Curtis Breland represented appellee in the matter. He did not testify before the Board nor does the record indicate he participated in the proceedings there. He was not subpoenaed as a witness, he was not called as a witness, and should not have testified in the appellate *1262 procedure. The lower court did not err in refusing to require him to withdraw as ap-pellee’s counsel.
III.
Did the lower court err in not finding fraud per se because the Board issued a notice on May 19, 1977, announcing the petitions had blocked issuance of the notes and in then meeting May 20, 1977, and deleting 328 names from the petitions, thereby denying the public the right to attend the judicial proceeding?
The appellants contend that they were kept from appearing at the May 20 meeting of the Board because they were not informed that there was such a meeting. One lady connected with the appellants inquired of the Chancery Clerk whether or not the Board would meet that day, and the clerk responded that he did not know. Another person asked Attorney Breland whether or not the Board would meet, and he answered that it would not. No member of the Board was asked whether or not a meeting would be held that day. The order of the Board clearly and without reservation adjudicates that 328 names were improperly on the petitions and that less than 20% of the electorate signed the petitions.
Appellants cite and rely upon Miles v. Board of Supervisors of Scott County, 33 So.2d 810 (Miss.1948). Miles is distinguished from the present case in that the Board of Supervisors of Scott County went into executive session while considering the petitions and excluded the petitioners from the session and deliberations. Further, members of the Board declined to inform the petitioners how they arrived at the number of qualified electors in the county and the number of qualified electors signing the petitions. The Court held that the Board of Supervisors was without authority to exclude from their meeting any of the interested parties or their attorneys, since such meeting constituted a judicial proceeding at which the record was made for review by the circuit court on appeal. The Court further said:
“Moreover, the action of the board in declining to disclose to the protestants and their attorney how many of those shown on the general election poll books were purged because of death, removal, and nonpayment of poll taxes, so as to enable the protestants to meet the proof taken in their absence when the board ‘went to the books and the folks that are supposed to know’ was purely arbitrary, and was, it is to be hoped, wholly unprecedented.” 33 So.2d at 813.
There are no facts in the record, or any competent evidence, which reflect that the meeting of the appellee Board on May 20, 1977, was held improperly or that there was any fraud or chicanery involved in the consideration of the petitions and entry of the order issuing the notes. Neither was there a denial of the right of the public and appellants to attend the judicial proceeding and there was no denial of due process.
IV.
Did the lower court err in assessing costs against appellants because appellee wrongfully subpoenaed 328 witnesses knowing they could not be heard on the trial (an appellate matter)?
The parties concede that this cause originated before the Board of Supervisors and that the circuit court (chancellor here) heard the matter as an appellate court on the record made before the Board. The 328 persons subpoenaed on the appellate hearing were not competent witness and to assess those costs against the appellants would be unfair and oppressive. Consequently, this assignment is well taken, and those costs are assessed against the appel-lee.
The cause is affirmed and the costs for 328 witnesses subpoenaed by appellee are assessed against it.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ„ and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.